IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| DEBORAH LAMPKIN,<br><br>       Plaintiff,<br>vs.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY,<br><br>       Defendant. | Case No.: 8:19-cv-002691-TJS |

### DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Washington Metropolitan Area Transit Authority ("WMATA") submits this Memorandum of Points and Authorities in support of its Motion for Summary Judgment.

### SUMMARY OF ARGUMENT

On the afternoon of January 25, 2018, Plaintiff boarded a WMATA Metrobus on Riverdale Road in Hyattsville, Maryland. As she walked towards a seat, Plaintiff lost her balance, but did not fall to the floor of the bus. Plaintiff claims she that she tripped over the metal frame surrounding the wheelchair ramp at the entrance to the bus, injuring her shoulder and knee. She claims that a portion of that metal frame was sticking up at an angle, one half to one inch above the floor. In her Complaint for negligence, she asserts that WMATA is liable for her injuries because it "failed to maintain a safe environment for business invitees and failed to amend a known danger."

Contemporaneous photographic and video evidence from the bus disprove the Plaintiff's assertion that a piece of the metal frame was jutting up from the floor. The photos and video

confirm that the metal frame surrounding the wheelchair ramp was flat against the bus floor, as designed. Plaintiff has not designated an expert witness to testify to the contrary.

WMATA's mechanics conduct routine periodic maintenance, inspection and testing of all of its buses, including both visual assessment and testing of the wheelchair ramp. In the three months preceding this incident, WMATA mechanics inspected and tested the ramp nine times, and found no defects in the ramp or its frame. And they found no defects when the ramp was inspected after this incident.

WMATA is entitled to summary judgment because it has sovereign immunity for its decisions regarding bus design and maintenance, and it was not on notice of any defect in the wheelchair ramp frame on which Plaintiff claims to have tripped.

**FACTS**

WMATA incorporates by reference its Statement of Material Facts.

**LEGAL STANDARD**

FED. R. CIV. P. 56 (c) provides that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See also, Mitchell v. Data General Corp.*, 12 F.3d 1310, 1311 (4th Cir. 1993).

FED. R. CIV. P. 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In 1986, the U.S. Supreme Court clarified its position on the use of summary judgment by establishing a framework which encourages trial courts to employ summary judgment where appropriate. In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court directed trial courts to eliminate non-meritorious claims by summary judgment.

The Supreme Court held that a judge deciding a defendant's motion for summary judgment should evaluate the evidence and decide whether it favors the plaintiff. *Matsushita* at 597. The Court gave trial courts greater latitude to examine and assess the plausibility of the plaintiff's theory and to grant summary judgment if the plaintiff's evidence is weak or favors the defendant. In determining whether a factual dispute should be submitted to a jury, the trial judge "must be guided by the substantive evidentiary standards that apply to the case and must bear in mind the actual quantum and quality of proof necessary to support liability." *Anderson.* at 254-255. The Court stated:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to verdict- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon who the onus of proof is imposed."

*Id.* at 252.

Once the moving party makes an initial showing that there are no genuine issues of material fact in dispute, the nonmoving party must demonstrate that there is a genuine issue for trial that is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts. *See Matsushita* at 587. The nonmoving party is required to go beyond the pleadings and

3

mere allegations to designate specific facts which show there is a genuine issue. *Celotex*, 477 U.S. at 324-25. Summary judgment will be granted if, based on the submission of admissible evidence on the issue in question, the court determines that the plaintiff would be unable to carry the burden of proof of his claim at trial. *Mitchell* 12 F.3d at 1311.

"If a nonmoving party at summary judgment adopts a position blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Riddick v. Wash. Metro Transit Auth.*, Case No. GJH-21-1300, 2021 WL 5999271 at *3 (D.Md. Dec. 20, 2021) "Thus, when the record contains video footage that is not open to more than one interpretation and contradicts the non-movant's assertions, the Court view[s] the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 381. *See also Lopez v. WMATA*, Case NO. WGC-15-4008, 2016 WL 6962868 at *7 (D.Md. Nov. 29, 2016) (viewing the facts in the light depicted by video evidence, which contradicted the Plaintiff's version of events.) In this case, the photographs of the wheelchair ramp frame, which are corroborated by video footage from the bus, flatly contradict the Plaintiff's assertions, and this Court should not adopt them for the purposes of this Motion.

## ARGUMENT

**A.    WMATA has sovereign immunity from Plaintiff's claims.**

The WMATA Compact is an interstate agreement among Maryland, Virginia, and the District of Columbia to create an entity responsible for overseeing a mass transportation system in the District of Columbia and surrounding areas. The Compact was approved in Maryland in 1965, Chapter 869 of the Laws of 1965, and was ratified by Congress in 1966, WMATA Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966). WMATA enjoys sovereign immunity as a

result of the Compact's signatories "confer[ring] their respective sovereign immunities upon it." *Morris v. WMATA,* 781 F.2d 218, 219 (D.C.Cir.1986); *see also Smith v. WMATA,* 290 F.3d 201, 206 (4th Cir.2002), *Proctor v. WMATA,* 412 Md. 691, 708, 990 A.2d 1048, 1057–58 (2010). WMATA's sovereign immunity has been waived, under certain circumstances, by Section 80 of the Compact, which states:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the zone of any immunity from suit.

Section 10–204(80) of the Transportation Article, Md. Code (1977, 2008 Repl. Vol.).

Under Section 80 of the Compact, WMATA has waived immunity for proprietary functions, but retained that immunity for governmental functions. *Proctor,* 412 Md. at 710, 990 A.2d at 1059. Federal and state courts of the jurisdictions in which WMATA operates use a test to determine whether a function is proprietary or governmental. The controlling inquiry is whether the challenged activity involves an element of discretion or choice that is "grounded in social, economic, and political policy." *Berkovitz v. United States,* 486 U.S. 531, 537, (1988) (internal quotations omitted); *see also Smith,* 290 F.3d at 206; *Burkhart v. WMATA,* 112 F.3d 1207, 1216–17 (D.C.Cir.1997); *Sanders v. WMATA,* 819 F.2d 1151, 1154–55 (D.C.Cir. 1987); *WMATA v. Barksdale–Showell,* 965 A.2d 16, 20–21 (D.C. 2009). If the activity involves an element of choice that is grounded in public policy, it is governmental and the agency is immune from suit; if the activity does not involve an exercise of discretion, or the discretion is

5

not grounded in concerns of public policy, then the agency does not enjoy immunity for the action.

> **1. WMATA has sovereign immunity for its discretionary maintenance decisions.**

Plaintiff has not designated an expert in bus wheelchair ramps, nor has she adduced evidence of any code, law, or internal WMATA policy that dictates the manner in which it must maintain its wheelchair ramps. Absent such a mandate, WMATA's decisions about how to carry out maintenance functions are exercises of discretion that are shielded by sovereign immunity. *See Bailbey v. Washington. Metro. Area Transit Auth.*, Civ. No. CBD 15-1731, 2016 WL 1391820 at *6 (D.Md. April 8, 2016). "The source of the allegedly dangerous condition . . . is not the dispositive issue. The controlling inquiry when determining whether WMATA is immune is if the 'decision is one which we would expect inherently to be grounded in considerations of policy. Because the underlying decision, proper maintenance procedures, was grounded in concerns of economic and public policy, WMATA is immune from suit." *See also Tinsley*, 429 Md. 217, 240, 553 A.3d 663, 677 (2012), citing *Smith v. Washington Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002) (holding that WMATA was immune for its decision to shut down two escalators and utilize the remaining one as a 'stationary walker').

> **2. WMATA has sovereign immunity for its discretionary decisions about bus design.**

Although Plaintiff's Complaint did not specifically assert negligence in the design of the wheelchair ramp, to the extent that her claims are construed as such, this claim would fail. WMATA enjoys sovereign immunity from claims of negligent design. In *Maxwell v. WMATA*, 633 A.2d 924, 930 (Md. App.1993), the plaintiff sued for injuries sustained when her vehicle ran over a partially-completed ticket island at a Metrorail parking garage. The Court of Special

6

Appeals affirmed WMATA's immunity from claims involving its design and planning function. *See also Baum v. United States*, 986 F.2d 716, 718 (4th Cir. 1993) (affirming dismissal of claims of negligent design and construction of, as well as claims regarding when to replace, guardrails as discretionary in nature and immune from suit).

This metal frame on which Plaintiff claims to have injured herself is a design feature of the wheelchair ramp. SMF ¶ 12. The frame secures the rubberized flooring of the bus, and does not change position when the wheelchair ramp deploys or is stowed. SMF ¶ 14. The photos that Transit Supervisor Hailey took at the scene show the metal ramp in its designed configuration. SMF ¶ 13. The frame was positioned as designed, serving its intended purpose of securing the flooring material. WMATA enjoys sovereign immunity for its design decisions, so Plaintiff may not assert a claim based upon the design on the wheelchair ramp.

**B.    Because the photographic and video evidence refute the Plaintiff's account, the Court should not adopt Plaintiff's version for the purpose of summary judgment.**

Plaintiff's description of the metal frame on which she claims to have tripped is contradicted by contemporaneous photos and video from the bus, so the Court should not adopt her claims as true for the purpose of deciding this motion. In her answers to WMATA's interrogatories, Plaintiff described the "uneven flooring" on which she blamed her misstep:

> INTERROGATORY 7: Describe the "uneven flooring" referenced in Paragraph 7 of your Complaint, including its location, and the size, shape and color of any irregularities in the flooring.
>
> **RESPONSE: Handicap support ladder was not properly put back all the way down in its place in the bus. That caused the floor to be uneven. Due to this Plaintiff tripped and fell which caused her injuries.**

Plaintiff elaborated on this description at deposition:

> Q: Do you know what caused you to trip?

7

A: It was the – the handicap, you know, the – the – the thing that lifts up, you know, that lift the, you know, the wheelchair up. That's what I tripped over.

Q: [] [W]as the wheelchair lift lowered when you boarded the bus?

A: It was – it was lowered but the other – some – some parts of it was up. It wasn't –

Q: Describe the part –

A: -- it wasn't all the way down.

Q. Describe the part that was up.

A: It's right in the middle where people cross at, you know, to go sit. Right across there, it was lifted a little.

. . .

Q: What material did it appear to be? For –

A: It was metal.

. . .

Q: [] And was it a – was there an isolated portion of the wheelchair ramp that was sticking up, or was it the whole frame of the wheelchair ramp?

A: It was, like, a portion of it was sticking up.

(Plaintiff put her palms together and her fingers apart at an angle demonstrating a gap approximately one-half to one inch.)

Q: So the portion – a portion of the ramp frame was sticking up a little bit?

A: Yes.

SMF ¶¶ 6-7, Ex. 3, Lampkin depo. at p. 26:14 – 29:4.

Photographs taken at the scene show the frame around the wheelchair ramp to be level with the floor of the bus, with no isolated portion sticking up as Plaintiff described. SMF ¶ 10, Ex. 5, Hailey Decl. and Ex. 6(A) 6(E). Closed Circuit Television ("CCTV") footage from the bus in the minutes prior to Plaintiff's boarding show six other passengers stepping, and even

8

standing, on different portions of the metal frame that Plaintiff claimed was partly "sticking up". *See,* Ex. 1, CCTV video (Camera 10 -FRONT DOOR at 18:48:42 - 18:49:21) Upon boarding the bus, Plaintiff walked past the bus operator towards the seats, then doubled back and briefly stood next to the bus operator, gesticulating before taking a seat. *Id.* at 18:50: 56 – 18:51:17 and Camera 11 – FRONT REAR at 18:51:20 – 18:52. Two more passengers boarded at the next stop, each stepping or standing on the metal frame of the wheelchair ramp, with neither giving any indication that a piece of the frame was sticking up at an angle as Plaintiff alleges. *Id.* Camera 10 FRONT DOOR at 18:53:27 – 18:53-32. A woman exited at the next stop, stepping on the wheelchair ramp without incident, as the previous passengers had done. *Id.* at 18:54:51 – 18:54:53. Because the photographic and video evidence blatantly contradict the Plaintiff's account, the Court should view the facts as they are depicted in the record, and not in Plaintiff's version of events. *See Scott v. Harris* at 381.

C. **Plaintiff's claim must fail because there is no evidence that WMATA was on notice of a dangerous condition that caused her alleged injury.**

In her Complaint, Plaintiff asserts that WMATA was negligent because it "failed to maintain a safe environment for business invitees and failed to amend a known danger." Plaintiff has adduced no evidence to support this claim. WMATA's bus maintenance records confirm that this wheelchair ramp was regularly inspected, tested and serviced. SMF ¶¶ 15-16. It is undisputed that WMATA's mechanics found no defects in the ramp during the inspections preceding this incident, and the ramp worked as designed. SMF ¶¶ 15-18. WMATA is entitled to summary judgment because a common carrier in Maryland is not liable for injury resulting from a dangerous or defective condition[1] unless it had actual or constructive notice of the condition,

---

[1] WMATA is characterizing this alleged condition as "dangerous or defective" solely for the purposes of this Motion, and not as an admission that such a condition existed at the time of Plaintiff's reported injury.

9

and failed to remedy it despite having had ample time to do so. *See Hall v. WMATA*, 679 F. Supp. 2d 629, 633 (2010) (granting summary judgment for WMATA in the absence of evidence that it knew or should have known of the condition that caused the plaintiff's injury), citing *Carolina Coach Co. v. Bradley*, 17 Md. App. 51, 56-57 299 A.3d 474 (Md. Ct. Spec. App. 1973) (there was no evidence of how long a bottle had been on the seat of the bus, thus plaintiff failed to prove that the bus company was negligent for not removing it before she sat on it), and *Lusby v. Baltimore Transit Co.,* 195 Md. 118, 125, 72 A.2d 754 (Md. 1950) (affirming judgment for the transit company because plaintiff failed to prove that it knew or should have known of the foreign substance on which she slipped). As WMATA had no prior notice of a dangerous condition involving this wheelchair ramp frame, it had no duty or opportunity to remedy the condition before this incident. WMATA bus mechanics found no defects in the wheelchair ramp when they inspected the bus and tested the ramp after this incident, further undermining Plaintiff's claim that a dangerous condition ever existed. SMF ¶ 19.

## CONCLUSION

For the foregoing reasons, WMATA respectfully requests that its motion for summary judgment be granted, and for such other relief as the Court deems just and proper.

DATE: February 28, 2022

Respectfully submitted,

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY
By counsel


By: /s/ Donna L. Gaffney
Donna L. Gaffney, #16299
Office of the General Counsel
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-2721
(202) 962-2550 (fax)
dlgaffney@wmata.com


**CERTIFICATE OF SERVICE**

I hereby certify that, on this 28th day of February, 2022, a copy of **Defendant WMATA's Motion for Summary Judgment, Statement of Material Facts not in Dispute, Memorandum of Points and Authorities, Index of Exhibits and Proposed Order** was served via ECF on:

Hector Oropeza, Esq.
199 E. Montgomery Avenue, Suite 100
Rockville, Maryland 20850
*Attorney for Plaintiff*


/s/ Donna L. Gaffney
Donna L. Gaffney