IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DEBORAH LAMPKIN, | * |
| Plaintiff, | * |
| v. | *   Civil No. TJS-19-2691 |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | * |
| | * |
| Defendant. | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Now pending before the Court is the Motion for Summary Judgment ("Motion") (ECF No. 28) filed by Defendant Washington Metropolitan Area Transit Authority ("WMATA").[1] Having considered the parties' submissions (ECF Nos. 28, 31 & 32), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion is granted.

**I.   Background**

This lawsuit arises from an injury that Plaintiff Deborah Lampkin ("Ms. Lampkin") suffered on January 25, 2018, while she was a passenger on a bus operated by WMATA. She originally filed this lawsuit in the Circuit Court for Prince George's County, Maryland. ECF No. 3. WMATA removed the case to this Court pursuant to the WMATA Compact, *see* Md. Code.,

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 7 (WMATA's written consent to proceed before magistrate judge); 8 (joint status report requesting that the case be assigned to a magistrate judge); 10 (order referring case to magistrate judge); 33 (order directing Plaintiff to file written notice of her consent to proceed before a magistrate judge by March 30, 2022); *see Roell v. Withrow*, 538 U.S. 580, 588-89 (2003) (holding that a party's consent to proceed before a magistrate judge may be inferred from the party's conduct during litigation).

Transp. § 10-204(81) (granting original jurisdiction over suits against WMATA to the United States District Courts). ECF No. 2. At the close of discovery, WMATA filed its Motion, which is now ripe for decision.

## II.     Discussion

### A.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must cite to "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

**B.     Undisputed Facts**

Unless otherwise noted, the following facts are not in dispute.[2] On January 25, 2018, Ms. Lampkin boarded a WMATA bus in Hyattsville, Maryland. While walking towards a seat, she stumbled. A surveillance video from an on-board camera captured the incident. *See* ECF Nos. 28-4 & 30. The video shows Ms. Lampkin boarding the bus through the door closest to the driver. Soon after boarding she appears to stumble and grabs onto a handrail to steady herself. She does not fall. Soon thereafter, she takes a seat close to the front of the bus.

During her deposition, Ms. Lampkin testified about the events that led to her alleged injury. On the date of the incident, Ms. Lampkin boarded the bus, paid her fare, turned, and stumbled. ECF No. 28-6 at 3. She grabbed onto a pole with her right hand to steady herself, felt a pain in her arm, and "grabbed onto the left pole trying to stop from falling." *Id.* She shifted her weight onto her right leg so that she did not fall. *Id.* Ms. Lampkin did not fall down. *Id.* She told the bus driver she tripped over something that she described as a piece of "the thing that lifts up . . . the wheelchair," which had a red or yellow marking, and which was sticking up at an angle, about one-half inch or one inch from the floor. *Id.* at 3-6.

WMATA's Transit Field Supervisor, Bonita Hailey, responded to the incident. ECF No. 28-8. During her investigation of the incident, she "took digital photographs of . . . the frame of the wheelchair ramp on which Ms. Lampkin claimed to have tripped." *Id.* The photographs, which

---

[2] In her opposition to WMATA's Motion, Lampkin relies only on argument, the unverified allegations of her Complaint, and WMATA's surveillance video (discussed below). *See* ECF No. 31. Because Ms. Lampkin's Complaint is unverified, its factual assertions may not be considered in opposition to Defendants' Motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (explaining that, "[a]s a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the [unverified] complaint, but must, by factual affidavit or the like, respond to the motion"); Fed. R. Civ. P. 56(c)(1)(A). In addition, to the extent that Ms. Lampkin has failed to address WMATA's assertions of fact as required by Rule 56(c), the Court will consider those facts to be undisputed. Fed. R. Civ. P. 56(e)(2).

3

Ms. Hailey declares are true and accurate depictions of the area referenced in Ms. Lampkin's Complaint, are attached to WMATA's Motion. ECF No. 28-9. The photographs depict the wheelchair ramp that Ms. Lampkin alleges she tripped over but do not show any pieces sticking up from the floor. *Id.* The photographs, which WMATA states accurately depict the scene at the time of the incident, are inconsistent with Ms. Lampkin's deposition testimony. Ms. Lampkin has not submitted any evidence to explain the discrepancy or to support a finding that her testimony should be favored over the objective evidence that WMATA submitted with its Motion.

WMATA's Project Manager of the Bus Maintenance Engineering department, Don Rich, submitted a declaration with additional evidence about the wheelchair ramp at issue. ECF No. 28-10. According to Mr. Rich, the "metal trim that frames the wheelchair ramp on [the bus] was designed to retain the rubberized bus flooring at the ramp opening." *Id.* at 1. The metal trim "does not change position when the ramp is deployed or stowed"; it is stationary. *Id.* The photographs that Ms. Hailey took at the scene of the incident "depict the metal trim properly framing the wheelchair ramp as they were designed to do," and "do not depict any portion of the metal trim that is out of alignment or otherwise misplaced or in need of repair." *Id.*

Mr. Rich's declaration explains that WMATA's buses undergo routine maintenance and inspection every 6,000 miles, with intervening inspections every 14 days. *Id.* at 2. Each bus's wheelchair ramp is inspected for "physical appearance and integrity, and is tested for proper operation" at every inspection. *Id.* In addition to these inspections, WMATA performs separate inspections of each bus's wheelchair ramps every 90 days, "to ensure proper performance and compliance with all requirements of the Americans with Disabilities Act." *Id.* A copy of WMATA's maintenance records for the bus at issue is attached to WMATA's Motion. ECF Nos. 28-11, 28-12, 28-13 & 28-14. Mr. Rich confirms that these records are true and accurate copies of

the documents that WMATA keeps in the ordinary course of business (with some redaction of confidential employee information). *Id.* These records indicate that "in the year preceding the incident described in Plaintiff's Complaint, and in the inspections immediately following it, there were no findings or reports of defects or irregularities in the flooring, flooring trim or flooring hardware of the wheelchair ramp." *Id.* Plaintiff has not submitted any evidence to contradict Mr. Rich's declaration that the wheelchair ramp was functioning as intended in the weeks before and after Ms. Lampkin's alleged injury.

      **C.**     **Request to Reopen Discovery**

Ms. Lampkin argues that if the Court determines "that there are misunderstood issues present in this case," the Court should "re-open Discovery to allow both Parties to more thoroughly understand each other's claims and defenses." ECF No. 31-1 at 5. Under Rule 56(d), the Court has discretion to defer ruling on a motion for summary judgment so that the parties can take discovery. To invoke this provision, the non-moving party must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). A non-moving party who fails to file a Rule 56(d) affidavit or declaration does so at her peril, because "the failure to file an affidavit under Rule [56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002); *Ryan v. McAleenan*, No. ELH-19-1968, 2020 WL 1663172, at *6 (D. Md. Apr. 3, 2020).

In this case, Ms. Lampkin had the opportunity to conduct the full course of discovery over nearly two years. *See* ECF Nos. 13 (establishing a discovery period of February 18, 2020, through June 29, 2020); 19 (extending the discovery deadline to June 30, 2021); 23 (extending the discovery deadline to September 28, 2021); and 25 (extending the discovery deadline to January

26, 2022). The Court denies her request to reopen discovery based on potentially "misunderstood issues present in this case" because (1) she had sufficient time to conduct discovery, (2) WMATA has presented sufficient evidence for the Court to rule on its Motion; and (3) she did not submit a Rule 56(d) affidavit or declaration.

### D.  Choice of Law

Under the WMATA Compact, WMATA is liable for torts that its employees commit "in the conduct of any propriety function, in accordance with the law of the applicable signatory (including rules on conflict of laws)." Md. Code, Transp. § 10-204(80); *see Robinson v. WMATA*, 774 F.3d 33, 38 (D.C. Cir. 2014). Maryland adheres to the *lex loci delicti* rule to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because the alleged tort took place in Maryland, the law of Maryland governs Ms. Lampkin's negligence claim.

### E.  Sovereign Immunity

WMATA argues that it is entitled to summary judgment because it enjoys sovereign immunity for governmental functions such as discretionary maintenance and bus design decisions. ECF No. 28-1 at 4-7. The WMATA Compact is an interstate agreement among Maryland, Virginia, and the District of Columbia to create an interstate entity responsible for overseeing a mass transportation system in and around the District of Columbia. The Compact was approved in Maryland in 1965, Chapter 869 of the Laws of 1965, and was ratified by Congress in 1966, Washington Metropolitan Area Transit Authority Compact, Pub. L. No. 89-774, 80 Stat. 1324 (1966). *See Tinsley v. WMATA*, 429 Md. 217, 222-23 (2012). "WMATA's sovereign immunity exists because the signatories have successfully conferred their respective sovereign immunities

6

upon it." *Morris v. WMATA*, 781 F.2d 218, 219 (D.C. Cir. 1986); *see also Smith v. WMATA*, 290 F.3d 201, 206 (4th Cir. 2002). The parties to the Compact have each adopted Section 80, which provides that:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

Md. Code, Trans. § 10–204(80). As such, WMATA has "waived immunity in certain circumstances, i.e., when it is engaged in proprietary functions, while specifically preserving its immunity for 'torts occurring in the performance of a governmental function.'" *Smith*, 290 F.3d at 206 (quoting Section 80 of the Compact). The Fourth Circuit has employed a two-part test to determine whether a function under the compact is "governmental." *Id.* at 207. First, when WMATA "is engaged in a quintessential governmental function, its activities fall within the scope of its immunity." *Id.* Examples of quintessential governmental functions are police activity, prosecutorial decisions, and firefighting. *Pierce v. WMATA*, No. DKC-09-1917, 2010 WL 4485826, at *3 (D. Md. Nov. 9, 2010). Second, even if WMATA is not engaged in a quintessentially-governmental function, the Court must still "determine whether the challenged activity is discretionary or ministerial." *Smith*, 290 F.3d at 207. Activities that are discretionary in nature are accorded governmental immunity, while ministerial activities, which "connote[] the execution of a policy as distinct from its formation" are not accorded governmental immunity. *Id.* at 208. In general, discretionary activities are those that are grounded in public policy choices. *Id.*

WMATA argues that it enjoys sovereign immunity for discretionary maintenance and bus design decisions, as both activities are grounded in choices of public policy, making them discretionary and governmental in nature. ECF No. 28-1 at 6. Ms. Lampkin argues that WMATA's

sovereign immunity arguments are "irrelevant." ECF No. 31-1 at 3-4. She concedes that she "is not making a claim on Defendant's bus design." *Id.* at 3. And, while Ms. Lampkin disagrees with WMATA's argument that WMATA enjoys sovereign immunity for its maintenance decisions, Ms. Lampkin states that the issue is beside the point because "this assertion is not even at the core or pertinent to Plaintiff's action." *Id.* Ms. Lampkin argues that "the lift or flooring was partly up," and that WMATA's operation of its bus while the bus was in such a condition was negligent. *Id.* Ms. Lampkin also argues, or at least appears to argue, that the policy implications that would stem from the Court's acceptance of WMATA's arguments are dire. *Id.* at 3-4. But it is not clear what Ms. Lampkin is getting at in this regard. And she makes no effort to distinguish or discuss the cases that WMATA cites in its Motion.

      The Court finds that WMATA enjoys sovereign immunity for its discretionary maintenance and bus design decisions. Although these decisions are not quintessentially governmental functions, they bear other hallmarks of actions that courts have found to be covered by governmental immunity. First, Ms. Lampkin has not identified any statute, regulation, or policy that dictates the manner in which WMATA must design and maintain the wheelchair ramps and the flooring areas that connect to them in its buses. *See Pierce*, 2010 WL 4485826, at *4 (explaining that to determine whether an activity is discretionary, the Court considers "whether any statute, regulation, or policy 'specifically prescribes a course of action for an employee to follow'" (quoting *KiSKA Constr. Corp. v. WMATA*, 321 F.3d 1151, 1158-59 (D.C. Cir. 2003)). WMATA's bus design and maintenance decisions were therefore not the execution of already existing policies, but the creation of new ones. Second, courts regularly apply governmental immunity to reject claims arising from WMATA's design and maintenance policy decisions. *See Pierce*, 2010 WL 4485826, at *4 (collecting cases and holding that "to the extent that Plaintiff's

case constitutes a challenge to the fence design, sovereign immunity would bar it"); *Bailbey v. WMATA*, No. CBD-15-1731, 2016 WL 1391820, at *6 (D. Md. Apr. 8, 2016) ("Because WMATA's snow and/or ice removal decisions are proper maintenance procedures grounded in concerns of economic and public policy considerations, WMATA has immunity from suit."); *Tinsley v. WMATA*, 429 Md. 217, 238 (2012) (holding that where "WMATA employees made determinations as to how best to complete a necessary maintenance task, determinations based on economic and policy considerations for which WMATA has immunity"); *Smith v. WMATA*, 290 F.3d 201, 209 (4th Cir. 2002) (according governmental immunity to WMATA's decision about placing an escalator out of service so that it could be used as a stairway); *Maxwell v. WMATA*, 98 Md. App. 502, 515 (1993) (finding that WMATA enjoyed governmental immunity for decisions regarding parking lot design and construction); *see also Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993). WMATA's choices about how to design and maintain its bus fleet are grounded in considerations of policy, as the choices necessarily took into account cost, safety, and feasibility considerations. As such, WMATA has sovereign immunity for its discretionary bus design and maintenance decisions. To the extent that Ms. Lampkin's claim arises from WMATA's decisions about bus design or maintenance (it is not clear to the Court that this is the case), WMATA is protected by sovereign immunity.

      F.    **Notice of a Dangerous Condition**

WMATA also argues that it is entitled to summary judgment because there is no evidence that WMATA had actual or constructive notice of any dangerous condition, and that it had such notice in sufficient time to remedy the condition or warn its passengers about it. ECF No. 28-1 at 9-10.

To recover for negligence in Maryland, a plaintiff has the burden of proving duty, breach of duty, proximate cause, and damages. *See, e.g.*, *Remsburg v. Montgomery*, 376 Md. 568, 582 (2003). Under Maryland law, "[t]he liability of owners of real or personal property to an individual injured on their property is dependent on the standard of care owed to the individual and that in turn is contingent upon a determination of the individual's status while on the property." *Bramble v. Thompson*, 264 Md. 518, 521 (1972).

An invitee is a person on the property for a purpose related to the owner's business. *See Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 688 (1998). A property owner generally owes an invitee a duty to use "reasonable and ordinary care to keep [its] premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [her] own safety, will not discover." *Bramble*, 264 Md. at 521.

Common carriers like WMATA, however, "owe an elevated duty of care to passengers." *Hall v. WMATA*, 679 F. Supp. 2d 629, 633 (D. Md. 2010) (citing *WMATA v. Reading*, 109 Md. App. 89 (1996)). A common carrier "owes its passengers the highest degree of care to provide safe means and methods of transportation for them." *Todd v. Mass Transit Admin.*, 373 Md. 149, 156 (2003). Nonetheless, a common carrier is not an insurer of the safety of its passengers. *Mass Transit Admin. v. Miller*, 271 Md. 256, 259 (1974). Rather, it "owes its passengers a duty to deliver them to their destination as expeditiously as possible, consistent with safety." *Id.* In order to hold a common carrier liable for negligence in circumstances such as those in the instant case, the carrier must have actual or constructive notice of the dangerous condition: "in the case of a foreign substance in the aisle or on the floor of a conveyance the plaintiff must show that the foreign substance was placed there by an employee of the carrier or that the employee knew, or by the exercise of proper care and diligence should have known of the presence of such foreign substance

and failed to remove it." *Hall*, 679 F. Supp. 2d at 633 (quoting *Carolina Coach Co. v. Bradley*, 17 Md. App. 51, 56-57 (1973)); *Mido v. WMATA*, No. TJS-19-1037, 2021 WL 915431, at *3 (D. Md. Mar. 10, 2021).

WMATA has submitted uncontroverted evidence that it regularly inspected the bus and tested the wheelchair ramp before and after this incident. None of these inspections and tests indicated any problems with the wheelchair ramp that would pose a danger to WMATA's passengers. In addition, WMATA has submitted video evidence showing other passengers boarding the bus and walking over the wheelchair ramp area without hesitation and without incident on the date of Ms. Lampkin's alleged injury. WMATA has also submitted photographic evidence of the condition of the wheelchair ramp immediately after Ms. Lampkin's alleged stumble. ECF Nos. 28-8 & 28-9. The photographs show the wheelchair ramp situated evenly with the floor of the bus (where it did not present a danger to WMATA's passengers). *Id.* Ms. Lampkin argues that she has presented evidence that the flooring around the wheelchair lift was uneven "and the bus was in motion while the Plaintiff was not in a safe place." ECF No. 31-1 at 4. The only evidence before the Court that the floor around the wheelchair ramp was uneven is Ms. Lampkin's somewhat ambiguous deposition testimony. ECF No. 28-6. Even viewing this evidence in the light most favorable to Ms. Lampkin, the evidence does not show that WMATA had notice of any dangerous condition. Similarly, there is no evidence that any dangerous condition existed for a sufficient length of time to put WMATA on constructive notice of the condition with sufficient time for WMATA to cure the danger or warn its passengers to exercise caution.

Finally, the Court notes that Ms. Lampkin does not allege in her Complaint that her injury was the result of WMATA moving its bus "while the Plaintiff was not in a safe place." ECF No. 31-1 at 4. And Ms. Lampkin expressly stated during her deposition that her injury was caused by

tripping over something sticking up from the floor near the wheelchair ramp. ECF No. 28-6 at 3-7. There is no evidence that Ms. Lampkin's stumble was caused by WMATA moving the bus when it was not safe to do so. And in any event, the video evidence demonstrates that Ms. Lampkin had completely boarded WMATA's bus at the time of her alleged injury. Nothing in the video indicates that Ms. Lampkin was suffering from any infirmity or disability that would have put WMATA on notice that it should not move its bus until she was seated. *Cf. Miller*, 271 Md. at 261-62 (explaining that "it is the duty of passengers, once on board, to protect themselves against the normal motions of the vehicle incident to public transportation," and that "once a passenger has planted both feet on a level portion of the floor of a vehicle sufficient in size to carry passengers in safety-be the place within or without the actual body of the car-he is in a place of safety and fairly on board"); *Carolina Coach Co.*, 17 Md. App. at 55 ("In Maryland, a bus driver is not required to wait until his passengers are seated before starting the bus in operation, unless the passenger labors under some apparent infirmity or disability." (quoting *Przyborowski v. Baltimore Transit Co.*, 191 Md. 63, 66 (1948)).

Because there is no evidence that WMATA had actual or constructive notice of any dangerous condition on its bus, and because Ms. Lampkin has otherwise failed to present any evidence that WMATA's negligence caused her injury, WMATA is entitled to summary judgment on Ms. Lampkin's negligence claim.

### III.  Conclusion

For the foregoing reasons, WMATA's Motion for Summary Judgment (ECF No. 28) is **GRANTED**. An accompanying order follows.

April 8, 2022  
Date

/s/  
Timothy J. Sullivan  
United States Magistrate Judge